NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

|  |  |  |
|---|---|---|
| SANDY MASSELLI, JR. AND ROBERT D. BONNELL, | : | |
| | : | |
| Plaintiffs, | | Civ. No. 08-1845 (GEB) |
| v. | : | |
| | | **MEMORANDUM OPINION** |
| TOTAL LUXURY GROUP, INC., DENNIS | : | |
| SINCLAIR, JANON COSTLEY, ROBERT | | |
| LAWAND, STEVEN W. HELLER, ORANDE | : | |
| GADSDEN, MICHAEL STONE, DAVID | | |
| BERKMAN, EQUITY TRANSFER & TRUST | : | |
| COMPANY, and FLORIDA ATLANTIC | | |
| STOCK TRANSFER, INC. | : | |
| | | |
| Defendants. | : | |

_____

**BROWN, Chief Judge**

      This matter comes before the Court upon the Motion for Remand of Sandy Masselli, Jr. ("Masselli") and Robert D. Bonnell ("Bonnell") (collectively, "Plaintiffs") and the Motion to Dismiss of Janon Costley ("Costley"), Steven W. Heller ("Heller"), Orande Gadsden ("Gadsden"), Michael Stone ("Stone") and Total Luxury Group, Inc. ("TLG") (collectively, "Defendants"). The Court has reviewed the parties' submissions and decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth below, the Court will deny Plaintiffs' motion to remand, deny Defendants' Rule 12(b)(5) motion to dismiss and deny Defendants' Rule 12(b)(2) motion to dismiss without prejudice.

**BACKGROUND**

      On December 6, 2007, Plaintiffs filed their first amended complaint (the "First Amended Complaint") in the Superior Court for the State of New Jersey, Monmouth County.  (Docket

Entry No. 1, Ex. 1.)  Plaintiff Masselli claimed to have been a beneficial owner of TLG, and until

recently, the Chief Executive Officer and Chairman of the Board of TLG.  (*Id*. at 4.)  Mr.

Masselli left TLG pursuant to the terms of an October 27, 2006 agreement (the "Separation and

Release Agreement").  (*Id.*)  The First Amended Complaint essentially sets forth claims of breach

of Contract against Defendants, and particularly claims for breach of the Separation and Release

Agreement, breach of the April 15, 2002 Deferred Compensation Agreement (the "Deferred

Compensation Agreement"), and breach of the December 21, 2001 Indemnification Agreement

(the "Indemnification Agreement") between the parties.  (*Id.* at 6-8.)  On April 11, 2008, the case

was removed to this Court.  (*Id.*)  On April 25, 2008, Plaintiff Masselli filed a motion to remand

the case back to state court.  (Docket Entry No. 3.)  On May 7, 2008, Defendants filed a motion

to dismiss the First Amended Complaint.  (Docket Entry No. 7.)  Both motions are opposed.

**DISCUSSION**

      A.     Plaintiff's Motion to Remand

      Plaintiff requests that the Court remand this matter, on the grounds that it lacks subject

matter jurisdiction over the case.  The Court disagrees.

      It is beyond dispute that:

> [a] federal court must have subject matter jurisdiction in order to
> hear a case. Subject matter jurisdiction in federal court falls within
> two categories of disputes: (1) diversity cases pursuant to 28
> U.S.C. § 1332, encompassing disputes between citizens of
> different states alleging an amount-in-controversy in excess of $
> 75,000; and (2) federal question cases pursuant to 28 U.S.C. §
> 1331, encompassing those disputes 'arising under the Constitution,
> laws, or treaties of the United States.'

*Scioscia v. Target Corp.*, No. 08-2593, 2008 U.S. Dist. LEXIS 53508, at *3 (D.N.J. July 14,

2008).

"Under 28 U.S.C. § 1441(a), a defendant in state court can attempt to remove to federal court any case over which the federal court would have had original jurisdiction." *Id*., *quoting Boyer v. Snap-On Tools Corp*., 913 F.2d 108, 111 (3d Cir. 1990). "Upon removal, however, the district court may remand the case to state court if the court finds that it lacks subject matter jurisdiction." *Scioscia,* 2008 U.S. Dist. LEXIS 53508, at *3, *citing* 28 U.S.C § 1447(c). "Further, the removing party has the burden of showing the propriety of removal by establishing the existence of federal subject matter jurisdiction." *Scioscia*, 2008 U.S. Dist. LEXIS 53508, at *4, *citing Dukes v. U.S. Healthcare, Inc*., 57 F.3d 350, 359 (3d Cir. 1995); *see also Brown v. Organon USA Inc*., No. 07-3092, 2008 U.S. Dist. LEXIS 50179, at *6 (D.N.J. June 27, 2008) ("On a motion to remand, the party asserting jurisdiction (the removing party) bears the burden of establishing that the action is properly before the court."). "The federal statutes governing removal are strictly construed in favor of remand." *Scioscia*, 2008 U.S. Dist. LEXIS 53508, at *4, *citing Steel Valley Auth. v. Union Switch & Signal Div*., 809 F.2d 1006, 1010 (3d Cir. 1987); *see also Brown*, 2008 U.S. Dist. LEXIS 50179, at *6 ("as federal courts are of limited jurisdiction, removal statutes should be construed strictly against removal, with all doubts resolved in favor of remand.").

The Court will not, however, remand a case where a non-diverse party has been added merely to deprive the Court of subject matter jurisdiction. Indeed, "[c]ourts have found joinder to be fraudulent where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *Abels v. State Farm Fire & Casualty Co.*, 770 F.2d 26, 32 (3d Cir. 1985), *quoting Goldberg v. CPC Int'l*, 495 F. Supp. 233, 239 (N.D. Cal.

3

1980); *see also Pinnacle Choice, Inc. v. Silverstein*, No. 07-5857, 2008 U.S. Dist. LEXIS 36786, at \*18 (D.N.J. May 6, 2008).  "In conducting its analysis, a court is not limited to the pleadings; rather, it may look beyond the pleadings 'to identify indicia of fraudulent joinder.'"  *Pinnacle*, 2008 U.S. Dist. LEXIS 36786, at \*19, *quoting In re Briscoe*, 448 F.3d 201, 219 (3d Cir. 2006). "In so doing, 'a district court must not step 'from the threshold jurisdictional issue into a decision on the merits.'"  *Pinnacle*, 2008 U.S. Dist. LEXIS 36786, at \*19, *quoting Briscoe*, 448 F.3d at 219.

"A removing party who seeks to justify removal on grounds of fraudulent joinder bears a heavy burden of persuasion." *Winged Lion-Holdings II, LLC v. Hevrdejs*, No. 05-96, 2005 U.S. Dist. LEXIS 26347, at \*7 (D.N.J. Oct. 31, 2005), *citing Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992). "A district court must resolve all contested issues of substantive fact in favor of the plaintiff and must interpret any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." *Winged Lion*, 2005 U.S. Dist. LEXIS 26347, at \*7, *citing Boyer v. Snap-on Tools Corporation*, 913 F.2d 108, 111 (3d Cir. 1990). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Gil v. Related Mgmt. Co.*, No. 06-2174, 2006 U.S. Dist. LEXIS 56757, at \*5-6 (D.N.J. Aug. 14, 2006), *citing Boyer v. Snap-on-Tools, Corp.*, 913 F.2d 108, 111 (3d Cir. 1990).

Plaintiff's motion to remand hinges on one primary allegation: that both Mr. Masselli and Defendant Berkman are citizens of the State of New Jersey, and that the Court therefore cannot have diversity jurisdiction over this matter.   (Pl. Br. 4.)  Plaintiff in particular points to the

4

Notice of Removal of Defendant Costley, which allegedly confirms that Mr. Berkman resides in New Jersey. (*Id.* at 5.) Plaintiff dismisses the contention that Mr. Berkman was fraudulently joined to this matter, arguing that Mr. Masselli's affidavit confirms that "David Berkman held the position of Division President for Y Brands, Inc., which was the only operating division of TLG," and confirms that he "was on the executive committee of TLG, that he was an officer of the company, and that he was eligible for Stock options and stock awards in lieu of cash." (*Id.* at 6.)

Defendant Costley, however, argues that "complete diversity exists" in this matter and that "Plaintiff's misguided efforts to defeat diversity by frivolously naming one defendant with the same citizenship as one of the Plaintiffs should not be countenanced by this Court." (Def. Opp'n 1.) Indeed, Defendant insists that "Berkman was not even employed by TLG, the purported breaching party, but rather was an employee of International Apparel Group, ("IAG") a subsidiary of TLG." (*Id.* at 2.) Moreover, Defendant submits that "Berkman was employed by IAG from January 2007 to July 2007, well after the underlying agreements which form the basis of Plaintiffs' causes of action were even entered into." (*Id.*)

Defendant explains that:

> [t]he allegations in Plaintiffs' complaint refer only to TLG or to all 'defendants' generally. In fact, aside from his inclusion in the caption, the only reference whatsoever to Berkman throughout the Complaint is the erroneous claim that he 'is and was at all relevant times an officer and/or director of TLG.

(Def. Opp'n 4.) Defendant also claims that the agreements that form the basis of Counts I, II and V of the First Amended Complaint contain no mention of IAG or Berkman and no allegation against either of them. (*Id.*) Finally, Defendant submits that TLG's 10K filings list the directors,

executive officers and significant members of the TLG management, as well as the membership of the stock option committee, the compensation committee, the audit committee, and the nominating committee. (*Id.* at 10-11.)  Defendant submits that Mr. Berkman is not once mentioned in those documents, and concludes that Plaintiffs only joined Berkman to defeat federal jurisdiction. (*Id.* at 11.)

"[F]or diversity jurisdiction to attach, all parties on one side of a litigation must be of a different citizenship from all of those on the other." *Carlsberg Resources, Corp. v. Cambria Sav. & Loan Assoc.*, 554 F.2d 1254, 1258 (3d Cir. 1977).  Plaintiff has alleged that Mr. Berkman is a resident of New Jersey, a contention that Defendants do not seem to contest.  Since Defendants bear the burden of proving the existence of subject matter jurisdiction over this case, remand may seem appropriate.  However, even viewing the allegations with all doubts resolved in favor of remand, the Court holds that diversity jurisdiction in this case was only broken by the fraudulent joinder of Mr. Berkman, and the Court will therefore deny Plaintiff's motion to remand.  Indeed, Mr. Berkman's inclusion in this case appears to owe more to his jurisdictional impact than his actual involvement with the issues from which this matter arises.  Mr. Berkman is not expressly linked to any alleged wrongdoing in the Amended Complaint and is not mentioned in any of the underlying agreements in this matter.  Tellingly, Mr. Masselli vaguely alleges that Mr. Berkman was an officer of the main executive arm of TLG, that he "was on the executive committee of TLG, that he was an officer of the company, and that he was eligible for Stock options and stock awards in lieu of cash," (Pl. Br. 6), yet the Court finds no mention of Mr. Berkman's name in TLG's 10K.  Mr. Berkman does not appear to have been connected in any meaningful way to the events that lie at the core of the First Amended Complaint, and Plaintiff

cannot set forth any colorable claim against him.  The Court will therefore deny Plaintiff's

motion to remand, and dismiss Mr. Berkman from this matter.

      B.     Defendants' Motion to Dismiss

      Defendants argue that Plaintiffs' Amended Complaint should be dismissed pursuant to

Federal Rule of Civil Procedure 12(b)(2) and 12(b)(5).  (Def. Br. 1.)   Federal Rule of Civil

Procedure 12 provides, in relevant part, that:

> Every defense to a claim for relief in any pleading must be asserted
> in the responsive pleading if one is required. But a party may assert
> the following defenses by motion: . . . (2) lack of personal
> jurisdiction;  . . . (5) insufficient service of process . . . .

Fed. R. Civ. P. 12(b).

      1.     Rule 12(b)(5)

      Defendant contend that Plaintiffs served Mr. Heller, Mr. Gadsden and Mr. Stone "by

delivering a copy of the Summons and First Amended Complaint to Janon Costley at *their place*

*of business*."  (Def. Br. 4.)  They submit that such service of process was deficient under the rules

of both Florida and New Jersey, and does not comply with Rule 4(e) of the Federal Rules of Civil

Procedure.  (*Id.*)  Defendants suggest that, as a result of said defective service of process, this

Court cannot exercise personal jurisdiction over these Defendants.

      Plaintiffs respond that Mr. Heller, Mr. Gadsden and Mr. Stone "were each served with the

summons and First Amended Complaint at TLG by serving Janon Costley, CEO for the

Company."  (Pl. Opp'n 9.)  Plaintiffs contend that "[s]ervice at defendants' place of business is

appropriate as this matter arises directly out of defendants' actions as officers and directors of

TLG," and add that Defendants do not claim to have suffered any prejudice as a result of the

method of service in the case at bar.  (*Id.* at 10.)

It is well settled that "a federal court sitting in diversity must apply the law of the forum state to questions that are 'substantive' but must use federal rules to govern 'procedural' matters." *Yohannon v. Keene Corp.*, 924 F.2d 1255, 1265 (3d Cir. 1991), *citing Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 92 (1938). The federal rules of service of process would therefore apply here. Under Federal Rule of Civil Procedure 4(e):

> Unless federal law provides otherwise, an individual--other than a minor, an incompetent person, or a person whose waiver has been filed--may be served in a judicial district of the United States by:
>   (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>   (2) doing any of the following:
>     (A) delivering a copy of the summons and of the complaint to the individual personally;
>     (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>     (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). Accordingly, the Court will review the issue of service of process in this case under both the Federal Rules of Civil Procedure and the New Jersey rules of civil procedure.

New Jersey Rule of Court 4:4-4, for its part, that:

> The primary method of obtaining in personam jurisdiction over a defendant in this State is by causing the summons and complaint to be personally served within this State pursuant to R. 4:4-3, as follows:
>
> (1) Upon a competent individual of the age of 14 or over, by delivering a copy of the summons and complaint to the individual personally, or by leaving a copy thereof at the individual's dwelling place or usual place of abode with a competent member of the household of the age of 14 or over then residing therein, or by delivering a copy thereof to a person authorized by appointment or by law to receive service of process on the individual's behalf . . . .

8

N.J. Rules Ct. 4:4-4.

There is no dispute in the case at bar that Mr. Heller, Mr. Gadsden and Mr. Stone were served through service on Mr. Costley at their place of business.  Neither the State nor the Federal Rules provide for such service under these circumstances.  Accordingly, the Court holds that the individual Defendants were not properly served.  The Court may therefore consider whether to dismiss the claims against these Defendants under Rule 4(m).  *See* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time.").  Courts have applied a two-step analysis in deciding whether claims under such circumstances: "[f]irst, a court must determine whether good cause exists for granting an extension of time.  If good cause exists, the extension must be granted; if not, then the court may use its discretion in deciding whether to dismiss the case without prejudice or to extend time for service." *Connolly v. Mitsui O.S.K. Lines*, 2006 U.S. Dist. LEXIS 59882, at *8 (D.N.J. Aug. 24, 2006), *citing McCurdy v. Am. Bd. of Plastic Surgery*, 157 F.3d 191, 196 (3d Cir. 1998).  Good cause may be found when the failure to serve properly is the result of excusable neglect.  Court will assess the following factors in deciding whether excusable neglect has occurred:

> 1) whether the inadvertence reflected professional incompetence such as ignorance of rules of procedure, 2) whether an asserted inadvertence reflects an easily manufactured excuse incapable of verification by the court, 3) counsel's failure to provide for a readily foreseeable consequence, 4) a complete lack of diligence or 5) whether the inadvertence resulted despite counsel's substantial good faith efforts towards compliance.

*Connolly*, 2006 U.S. Dist. LEXIS 59882, at *9.

There is no suggestion that good cause exists for the failure to serve the Defendants in the case at bar properly.  Reviewing the parties' submissions to the Court, there is no evidence that Plaintiffs have tried other methods of service, or have encountered any unforeseen difficulties in serving the papers.  Instead, the failure to serve here seems to stem entirely from a misunderstanding of the rules of service.  In fact, Plaintiffs' opposition brief tellingly fails to provide any legal support for its position, arguing instead that the service should be deemed proper because "Defendants claim no prejudice in being served at the company offices."  (Pl. Opp'n 9.)   Nevertheless, the Court will in its discretion and in the interest of judicial economy grant Plaintiffs ten days to perfect service pursuant to the Federal Rules of Civil Procedure or the New Jersey Rules of Court.

        2.        Rule 12(b)(2)

Defendants insist that Plaintiffs' First Amended Complaint should be dismissed because the Court does not have personal jurisdiction over Defendants.

"[I]n deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." *Ledgestone Assocs., LLC v. Internet Methods*, No. 06-567, 2008 U.S. Dist. LEXIS 49081 (D.N.J. June 27, 2008), *quoting Toys 'R' Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003). "If an issue is raised as to whether a court lacks personal jurisdiction over a defendant[, however,] the plaintiff bears the burden of showing that personal jurisdiction exists." *Marten v. Godwin*, 499 F.3d 290, 295-96 (3d Cir. 2007), *citing G.E. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001).

"A district court sitting in diversity applies the law of the forum state in determining

10

whether personal jurisdiction is proper." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods.*, 75 F.3d 147 (3d Cir. 1995). New Jersey's long-arm statute permits the exercise of personal jurisdiction over a non-resident defendant to the outer boundaries allowed under the Due Process Clause of the Fourteenth Amendment. N.J. COURT RULE 4:4-4; *Charles Gendler & Co., Inc. v. Telecom Equip. Corp.*, 102 N.J. 460 (1986). Pursuant to the Due Process Clause, personal jurisdiction may be asserted over a non-resident so long as the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). These contacts must be of a nature such that the individual non-resident defendant "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

There are two theories under which personal jurisdiction may be exercised: general and specific jurisdiction. First, the court may find that the defendant has had sufficiently "continuous and systematic contacts" with the forum to support general jurisdiction. *Nicholas v. Saul Stone & Co. LLC*, No. 97-860, 1998 U.S. Dist. LEXIS 22977, at *10 (D.N.J. 1998) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984)). To support such a finding, the plaintiff must show significantly more than mere minimum contacts with the forum state. *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). The facts required to establish general jurisdiction must be "extensive and persuasive." *Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 589 (3d Cir. 1982). "If a party is subject to the general jurisdiction of a state, that party can be called to answer any claim

against her, regardless of whether the subject matter of the cause of action has any connection to the forum." *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992).

Second, if the cause of action is related to or arises out of the defendant's activities within the forum, the court may exercise specific jurisdiction. *Id*. This principle gives rise to a two-prong test: (1) the defendant must have constitutionally sufficient "minimum contacts" with the forum State, and (2) if minimum contacts are shown, jurisdiction may be found where the court determines, in its discretion, that to do so would comport with "traditional notions of fair play and substantial justice." *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.*, 75 F.3d 147, 150-51 (3d Cir. 1996). The first prong – sufficient minimum contacts – exists if the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co. v. Superior Court of Cal*., 480 U.S. 102, 109 (1987) (quoting *Burger King*, 471 U.S. at 475). Once the plaintiff has made out a prima facie case that satisfies the first prong, the defendant must present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. In determining whether the assertion of jurisdiction violates the second prong, which requires upholding traditional notions of fair play and substantial justice, the court must consider several factors: the burden on the defendant, the interests of the forum state, plaintiff's interest in obtaining relief, the interstate judicial system's interest in obtaining efficient resolutions of controversies, and, if relevant, the shared interest of the several states in furthering substantive social policies. *Id*. at 476-77.

Defendants submit first of all that Plaintiffs have not established general jurisdiction over

TLG or the individual Defendants.  (Def. Reply 4.)   Defendants acknowledge that the Indemnity

Agreement attached to the Masselli Affidavit suggests that it was executed in the State of New

Jersey, and that it contains a New Jersey choice-of-law provision, but add that the SEC filings

attached to the Masselli Affidavit do not establish systematic and continuous contacts with the

state of New Jersey as the 2001 SEC filing indicates that TLG had its principal executive offices

in Montreal, Canada, and that in 2004 through 2006 its pricipal executive offices were located in

New York City.  (*Id.* at 5.)   Finally, Defendants assert that the Masselli Affidavit "does not

contain any documentary evidence that TLG had a bank account, credit card merchant services in

New Jersey or any documentary evidence that TLG conducted substantial business within the

State of New Jersey . . . ."  (*Id.* at 6.)   Defendants conclude that this Court cannot exercise

general jurisdiction over the Defendants.

Turning to the issue of specific jurisdiction, Defendants explain that the Plaintiffs' claims

concern an alleged breach of an October 2006 Separation and Release Agreement, an alleged

breach of a November 2006 Deferred Compensation Agreement, and alleged breaches of a 2001

Indemnification Agreement.  (Def. Reply 7.)  Defendants insist that there is no allegation in the

First Amended Complaint "that these agreements were negotiated or entered into with the

plaintiffs in the State of New Jersey."  (*Id.*)  Indeed, Defendants suggest that "[t]he only apparent

connection between the underlying activity in this lawsuit and the State of New Jersey is Plaintiff

Sandy Masselli's residence in the State of New Jersey and the fact that the 2001 Indemnification

Agreement may have been executed by Plaintiffs . . . in the State of New Jersey in 2001."  (*Id.* at

8.)   Moreover, Defendants argue that Counts V and VI relate to indemnification for cases filed in

2007, "long after TLG had any connection with the State of New Jersey."  (*Id.*)  Defendants

conclude that the Court cannot exercise specific jurisdiction over TLG because it does not have the necessary minimum contacts with the State.

Defendants also suggest that even if TLG is found to have minimum contacts with the State of New Jersey, the Court should hold that the individual Defendants lack such contacts.  In particular, Plaintiffs argue that any contacts by TLG may not be attributed to the Individual Plaintiffs.  (*Id*. at 10.)  Defendants posit that "the declarations of Janon Costley, Steven W. Heller, Orlande Gadsden, and Michael Stone have attested to the fact that they have no personal or business contacts in New Jersey, own no property there, and have not even visited there recently."  (*Id.* at 11.)  Defendants add that there has been no showing that the individual Defendants participated in the contract negotiations.  Accordingly, Defendants submit that the Court has neither general nor specific jurisdiction over the individual Defendants.  (*Id.* at 12.)

Plaintiffs, however, insist that the Indemnification Agreement, the Deferred Compensation Agreement and the Separation and Release Agreement were executed by Mr. Masselli when he was acting Chief Executive Officer and Chairman of the Board of Directors of TLG, that these agreements were negotiated and executed in New Jersey, that TLG at the time was headquartered in New Jersey, and that TLG at the time "maintained both a bank account in New Jersey and credit card merchant services in New Jersey."  (Pl. Opp'n at 7.)  Plaintiffs add that "[i]t was not until after Mr. Masselli's separation from the company that TLG moved its headquarters to Miami, Florida."  (*Id.*)  Indeed, Plaintiffs argue that TLG "operated its business in the State of New Jersey for many years, in particular those years in which plaintiffs were officers of the company."  (*Id.* at 7.)  Plaintiffs also submit that "[d]uring the time period relevant to this litigation TLG even declared Rumson, New Jersey as its principal place of business in

14

Securities and Exchange Commission filings."  (*Id.*)

The Court is not satisfied that the factual record relating to the issue of personal jurisdiction has been sufficiently developed at this time.   Indeed, there remain wide discrepancies in the contention of the parties as to even basic issues of fact, to wit: Plaintiffs submitting that TLG used to have offices in New Jersey, "maintained both a bank account in New Jersey and credit card merchant services in New Jersey", and negotiated and executed the underlying agreements in New Jersey, with Defendants steadfastedly insisting that there is no documentary evidence of TLG ever having had a bank account, a credit card or merchant services in New Jersey.  It remains unclear from the submissions to the Court whether there ever was an IAG or TLG office in New Jersey, and whether it still exists.

The record relevant to this Court's jurisdiction over Mr. Sinclair, Mr. Costley, Mr. Heller, Mr. Lawand, Mr. Gadsden, and Mr. Stone is equally deficient.  It is well established that the Court cannot exercise personal jurisdiction over these Defendants simply because they are officers of a corporate Defendant over which the Court does have jurisdiction.  *Bernisky v. Baylor Trucking, Inc.*, No. 06-6246, 2007 U.S. Dist. LEXIS 47286 (D.N.J. June 29, 2007) ("A person, however, is not automatically subject to personal jurisdiction simply because they are a corporate officer."), *citing Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984).  It remains unclear how these individuals are otherwise linked to the State of New Jersey, since the Defendants have attested that they have no personal or business contacts in New Jersey, own no property there, and have not even visited there recently.  In the interest of justice, the Court holds that it will deny Defendants' Rule 12(b)(2) motion to dismiss without prejudice, and allow for one month of discovery on the issue of personal jurisdiction over the Defendants, after which

15

Defendants may reinstate said motion and the Court will hold an evidentiary hearing on that issue.

**CONCLUSION**

For the reasons set forth above, the Court will deny Plaintiffs' motion to remand, deny Defendant's Rule 12(b)(5) motion to dismiss and deny their Rule 12(b)(2) motion to dismiss without prejudice.  An appropriate form of Order accompanies this Opinion.

Dated:  8/28/08

        s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.

16